✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

11:42 am, Aug 26 2022

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Paul E. Budlow
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*
**JTM** 06.2.22

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

June 27, 2022

David Walsh-Little
The Law Office of David Walsh-Little, LLC
1014 West 36th Street
Baltimore, MD 21211
1.410.205.9337 (Phone)
1.667.401.2414 (Fax)

Re:     *United States v. Dennis James Harrison,*
         Case No. JKB-22-037

Dear Mr. Walsh-Little:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Dennis James Harrison (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 14, 2022, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense of Conviction</u>

1.     The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

<u>Elements of the Offense</u>

2.     The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the time alleged in the Indictment, in the District of Maryland:

       a.     Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

1

Rev. August 2018

b.      For the purpose of producing a visual depiction of such conduct; and

c.      The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

## Penalties

3.      The parties agree that under 18 U.S.C. § 2251(e), the defendant had a prior conviction under the law of any State relating to aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor or ward, and the production, possession, receipt, mailing, sale, distribution, shipment, and transportation of child pornography. Thus, the maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2251(a) | 25 years | 50 years | Life (min. 5y) | $250,000 | $100 and $5,000 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259(b)(2)(b).

d.      Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

e.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

2

Rev. August 2018

       f.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

       g.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence.  Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

       a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

       b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

Rev. August 2018

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the Government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify.  If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case.  Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

4

6.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

7.     This Office and the Defendant agree to the following Sentencing Guidelines:

a.     A stipulation of facts is attached as Attachment A to this plea agreement that specifically establishes the commission of additional offenses than those to which the defendant has agreed to plead guilty. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

Group One: Sexual Exploitation of Jane Doe 1 on or about June 2, 2020 (Count 1):

b.     The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

c.     Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a 2-level increase because the victim in this case was under the age of 16 at the time of the offense. [Subtotal: 34].

d.     Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 36].

e.     Pursuant to U.S.S.G. §2G2.1(b)(3), there is a 2-level increase because the Defendant knowingly engaged in distribution. [Subtotal: 38].

f.     Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 40].

g.     Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the defendant used a computer to entice the victim. [Subtotal: 42].

Group Two: Sexual Exploitation of Jane Doe 1 between September 2020 and August 2021) (Count Two):

h.     The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

i.     Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a 2-level increase because the victim in this case was under the age of 16 at the time of the offense. [Subtotal: 34].

5

j.       Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 36].

k.       Pursuant to U.S.S.G. §2G2.1(b)(3), there is a 2-level increase because the Defendant knowingly engaged in distribution. [Subtotal: 38].

l.       Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 40].

m.       Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the defendant used a computer to entice the victim. [Subtotal:  42].

Group Three:  Attempted Sexual Exploitation of Jane Doe 1 on July 30, 2021 (Count 3):

n.       The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

o.       Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a 2-level increase because the victim in this case was under the age of 16 at the time of the offense. [Subtotal:  34].

p.       Pursuant to U.S.S.G. §2G2.1(b)(3), there is a 2-level increase because the Defendant knowingly engaged in distribution.  [Subtotal: 36].

q.       Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 38].

r.       Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the defendant used a computer to entice the victim. [Subtotal:  40].

Group Four: Coercion and Enticement of Jane Doe 1 between September 2020 to August 2021 (Count 5):

s.       The base offense level for coercion and enticement of a child is 28, pursuant to U.S.S.G. § 2G1.3(a)(3)).

t.       Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a 2-level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal:  30].

u.       Pursuant to U.S.S.G. § 2G1.3(b)(2)(B), there is a 2-level increase because the offense involved undue influence. [Subtotal:  32].

v.       Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a 2-level increase because the defendant used a computer to entice the victim. [Subtotal:  34].

Rev. August 2018

w.      Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 36].

Groups Five, Six and Seven: Sexual Exploitation of Jane Doe 2 between January 2018 to December 2018 (Counts 6, 7, 8):

x.      The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

y.      Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a 4-level increase because the victim in this case was under the age of 12 at the time of the offense. [Subtotal: 36].

z.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a 2-level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 38].

Grouping:

aa.      Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.4, sexual exploitation of the same minor victim on different days does not group. The group with the highest offense level is 42 (Groups One and Two) and there are 3 additional groups equally serious or from 1 to 4 levels less serious (Groups Five, Six and Seven) for a total of 5 units. Thus, pursuant to U.S.S.G. §§ 3D1.4, 5 levels are added to Group One. (Subtotal: 47).

8.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Total: 44).

Chapter Four Enhancement:

9.      Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal: 49).

10.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.

7

Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

12.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

13.    This Office represents that, providing that the Defendant receives a sentence pursuant to this plea agreement, the Frederick County State's Attorney's Office will enter a nolle prosequi in the following case in the Circuit Court for Frederick County:

i.  State of Maryland v. Dennis James Harrison, # C-10-CR-21-000640;

14.    At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

15.    The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## Waiver of Appeal

16.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the

8

Rev. August 2018

Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

17.     a.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

i.      The following items originally seized by law enforcement authorities from the Defendant on August 12, 2021:

1. Alcatel Raven phone, model A574BL S/N: 015295003654430
2. SanDisk Cruzer Glide USB, 16GB, S/N: 9069510C
3. SanDisk Cruzer USB, S/N: BM180926786B S/N: 823ACDB3
4. Red USB 8GB, S/N: 003C171E
5. Silver Kenmore USB 4GB, S/N: 00C9FE8
6. SanDisk micro SD card 16GB, S/N: 37376532
7. Red tablet, model QT-7
8. SanDisk Cruzer Glide USB 16GB, S/N: BL1806252

c.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.      The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the

Rev. August 2018

jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

          e.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

18.      Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

19.      The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from the Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Additional Special Assessments in Sex Crimes Cases

20.      Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 110 (relating to sexual exploitation and other

Rev. August 2018

abuse of children), the Defendant must pay an additional special assessment of $5,000, unless the Defendant is indigent.

21.   Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess: (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

### Defendant's Conduct Prior to Sentencing and Breach

22.   Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

23.   If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

24.   The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or

Rev. August 2018

representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

25.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Paul E. Budlow
Assistant United States Attorney
Joyce King
Special Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7-8-22
Date

Dennis James Harrison

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12

Rev. August 2018

7-8-22
_____
Date

Mr. David Walsh-Little

Rev. August 2018

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Dennis James Harrison ("Harrison"), age 40, is a resident of Rocky Ridge, Maryland. As detailed below, between 2018 through 2021, Harrison sexually exploited two minors who were between the ages of 10 and 12 at the time of the abuse. The defendant produced images and videos of the victims engaged in sexually explicit conduct.

### Prior Conviction:

On or about August 12, 2009, in the Court of Common Pleas of Adams County, Pennsylvania, in Case No. CP-01-CR-1029-2005, the defendant was convicted of seventy-seven counts of possession of child pornography, in violation of Section 6312(d)(1) of the Pennsylvania Crimes Code. The convictions for possession of child pornography relate to aggravated sexual abuse, sexual abuse, and abusive sexual conduct involving a minor or ward, and the production, possession, receipt, mailing, sale, distribution, shipment, and transportation of child pornography, pursuant to 18 U.S.C. § 2251(e).

Harrison was registered at the time of the offenses described through his arrest.

### Harrison's Sexual Exploitation of Jane Doe 1 (Counts 1-5):

Jane Doe 1's mother dated Harrison briefly in the late 1990's. The two had little or no contact until they reconnected in 2019. When they reconnected, Harrison told her that he wanted to get to know her two youngest daughters who he referred to as his sisters. One of the daughters is Jane Doe 1, who was 12 years old when she was introduced to Harrison in about November 2019.

Harrison arranged to spend time alone with Jane Doe 1, including picking her up from her home in his car, and driving Jane Doe 1 to his residence and other locations. Harrison first sexually abused Jane Doe 1 in or about September 2020. While alone with Jane Doe 1 in his residence in Thurmont, Maryland, Harrison engaged in vaginal intercourse with Jane Doe 1. Harrison sexually abused Jane Doe 1 on multiple occasions until August 2021 when he was arrested. The abuse included vaginal intercourse and oral sex.

Harrison used his mobile phone to coordinate his taking custody of Jane Doe 1 with Jane Doe 1's mother. The custody included overnight stays at Harrisons' residences in Maryland. Harrison sexually abused Jane Doe 1 in both residences, and in his car, and created images of the abuse at all of those locations.

1

During the incidents of abuse, Harrison frequently created images with his phone, and later sent her pictures of the abuse using the Telegram application on his phone.  Harrison caused Jane Doe 1 to download the application for the express purpose of exchanging messages and images regarding his abuse of Jane Doe 1.  Harrison also caused Jane Doe 1 to self-produce nude images of herself and send those images to Harrison through social media and messaging applications on her phone.

An example of the chats Harrison engaged in with Jane Doe 1 are shown in the chat below, using the TikTok application:

On July 27, 2021:

| | |
|---|---|
| **Harrison:** | Daddy's slut I miss you so much |
| **Jane Doe 1:** | I miss u too |
| **Harrison:** | I want to say something |
| **Jane Doe 1:** | What |
| **Harrison:** | I miss seeing you deep throat |

* * *

| | |
|---|---|
| **Harrison:** | I thought you liked throat |
| **Harrison:** | you are great at it |
| **Jane Doe 1:** | It's okay it just hurts a little and hard to breathe |
| **Harrison:** | sorry but never stop doing it |
| **Jane Doe 1:** | I not |
| **Harrison:** | it's a art that you mastered |
| **Harrison:** | the last video we made was perfect |

On July 29, 2021:

| | |
|---|---|
| **Harrison:** | then don't tease me like that, you don't want daddy's cock, fine |
| **Jane Doe 1:** | How did I tease you |
| **Harrison:** | sending dates for sex |

2

**Harrison:**     you know what you did,

**Harrison:**     it's OK for you to do it,

**Jane Doe 1:**   Yeah but that said girlfriend I not your girlfriend Melissa is I'm ur little sister

During his abuse of Jane Doe 1, Harrison produced the following images and series of images, which were later found on his devices and/or in his Google account:

Group One:  Sexual Exploitation of Jane Doe 1 on or about  June 4, 2020 (Count One):

On or about June 4, 2020, Harrison abused Jane Doe 1 while alone with her inside his Maryland residence.  Harrison inserted his penis into Jane Doe 1's mouth while in his bedroom. Harrison produced a series of 9 images the images depicting his penis inserted into Jane Doe 1's mouth.  The images were produced and stored on an Alcatel Raven phone, model A574BL, S/N: 015295003654430, which was manufactured outside of Maryland.

Group Two:  Sexual Exploitation of Jane Doe 1 between September 2020 and August 2021) (Count Two):

September 2020 – August 2021, while inside his vehicle, Harrison inserted his penis into Jane Doe 1's mouth and produced images of that abuse.  Three images of the abuse were located in Harrison's Google account, each depicting Jane Doe 1 with an adult male penis in her mouth. When asked about this incident, Harrison admitted to abusing Jane Doe 1 and producing the images.  Harrison claimed that the abuse occurred the same day that he picked Jane Doe 1 up from her residence, and took her to what he described as a "crack house" in Howard or Carroll County. Harrison stated that while at the house he also recorded himself having sex with Jane Doe 1 in one of the bedrooms.

Group Three:  Sexual Exploitation of Jane Doe 1 on or about July 30, 2021 (Count Three):

No later than July 30, 2021, Harrison caused Jane Doe 1 to self-produce nude images of herself in the shower.  Harrison asked Jane Doe 1 to take pictures of herself in the shower, including "top and bottom."  Jane Doe 1 sent at least three such images to Harrison, which he saved in the photo gallery of his Alcatel phone.  The images depict Jane Doe 1 in the shower, showing her face and nude upper body.  Jane Doe 1 was shown the image and she confirmed the image depicted her in the shower, and that Harrison requested her to take and send images of her in the shower.

**Harrison's Sexual Exploitation of Jane Doe 2 in or about 2018 (Counts 6-8):**

Harrison dated Jane Doe 2's mother in 2018, when Jane Doe 2 was 10 and 11 years old. On at least three separate occasions in 2018, Harrison surreptitiously placed his phone on the ground in his duffle bag, in locations where he knew that Jane Doe 2 would change clothes, and

3

Rev. August 2018

positioned his phone to record Jane Doe 2 as she undressed, intending to produce images depicting the lascivious display of Jane Doe 2's genitals.

Images relating to three attempts to produce child pornography of Jane Doe 2 were located in Harrison's Google account, Alcatel phone, and other storage devices found within a hidden compartment at his residence. Those images are described here:

| Count | Details |
|---|---|
| 5 | A series of 38 image files that depict Jane Doe 2 nude and partially nude, in a bedroom in Pennsylvania. |
| 6 | A series consisting of one video and 15 image files that depict Jane Doe 2 nude and partially nude, as she enters and exits a shower in a bathroom in Pennsylvania. |
| 7 | A series of 3 image files that depict Jane Doe 2 nude and partially nude, in bathroom in Maryland. |

### Search Warrant and Defendant's Arrest

On August 12, 2021, investigators executed a search warrant at Harrison's residence in Maryland.

During the interview, Harrison admitted he sexually abused Jane Doe 1 starting when she was approximately 12 years old. Harrison told investigators that the sexual abuse included vaginal, oral, and "everything." Harrison also admitted to producing videos and images of the abuse on multiple occasions, and that he later created screenshots while viewing the videos.
When informed that a search and seizure warrant was being conducted at his residence, Harrison disclosed that all of his child pornography was in a hidden compartment in the residence, including an Alcatel cellphone that he used to film multiple incidents of child sexual abuse with Jane Doe 1. Investigators located and seized the following digital devices during the search of the defendant's residence and vehicle:

    a. Alcatel Raven phone, model A574BL S/N: 015295003654430;
    b. SanDisk Cruzer Glide USB, 16GB, S/N: 9069510C;
    c. SanDisk Cruzer USB, S/N: BM180926786B S/N: 823ACDB3;
    d. Red USB 8GB, S/N: 003C171E;
    e. Silver Kenmore USB 4GB, S/N: 00C9FE8;
    f. SanDisk micro SD card 16GB, S/N: 37376532;
    g. Red tablet, model QT-7; and
    h. SanDisk Cruzer Glide USB 16GB, S/N: BL1806252.

The items were forensically examined and investigators located files depicting sexual abuse of children on all of the devices. The depictions included over 14,000 files of child pornography, including depictions of infants and toddlers.

4

Rev. August 2018

The defendant agrees that the images and videos described above were produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All of the events described above occurred in the District of Maryland.

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

Dennis James Harrison

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

David Wash-Little
Counsel for Defendant

5

Rev. August 2018